# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Penny D. Goudelock, | District Court Case No. 2:15-cv-01413-MP |
| Appellant, | BK Internal Appeal No: APE#15-S016 |
| v. | BK Adversary No. 15-01093 |
| Sixty-01 Association of Apartment Owners, | BK Case No. 11-12725-TWD Chapter 13 |
| Appellees. | APPELLANT'S OPENING BRIEF |

DATED this 16th of November, 2015

Christina L Henry, WSBA# 31273
Henry, DeGraaff & McCormick, PS
1833 N 105th St, Ste 203
Seattle, WA 98133
chenry@hdm-legal.com
Tel# 206-330-0595

*Attorney for Appellant*
*Penny Goudelock*

## <u>TABLE OF CONTENTS</u>

Table Of Authorities ..................................................................................... iii

Jurisdictional Statement .................................................................................1

Statement Of Issues Presented For Review ....................................................1

Statement Of The Case ...................................................................................2

Facts ...............................................................................................................2

Standard of Review ........................................................................................5

Law And Argument ........................................................................................5

    I.     State Condo Association Laws Cannot Peacefully Coexist With a

Federal Bankruptcy Scheme Where Discharge Implies Preemption ...................5

       A.   State Laws That Impede a Debtor's Fresh Start Are Preempted......6

       B.   A Condominium Association's Right to Collect Post-Petition

Assessments is a Pre-Petition Claim that is Governed by the

Bankruptcy Code............................................................................................11

       C.   The Condo Assessment Exception In 11 U.S.C. § 523(a)(16)

Does Not Apply..............................................................................................17

    CONCLUSION..............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*BAC Home Loans Servicing, LP v. Fulbright*, 180 Wn.2d 754, 328 P.3d 895 (2014)

........................................................................................... 11, 12, 16

*Bassett v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747 (9th Cir. BAP 2000) ...8

*BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)................................................8

*Butner v. United States*, 440 U.S. 48 (1979)...........................................................13

*Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.),* 201 F.3d 999 (9th

Cir. 2000) ........................................................................... 13, 16, 17

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141 (1982) .............5

*FMC Corp. v. Holliday,* 498 U.S. 52 (1990) ...........................................................6

*Free v. Bland,* 369 U.S. 663 (1962)...........................................................................6

*Grady v. AH Robins Co.*, 839 F.2d 198 (4th Cir. 1988) .........................................17

*Grogan v. Garner,* 498 U.S. 279 (1991).................................................................6

*In re Coonfield*, 517 B.R. 239 (Bankr. E.D. Wash. 2014).......................................14

*In re Davis*, 716 F.3d 331 (4th Cir 2013) ...............................................................10

*In re Foster*, 435 B.R. 650 (9th Cir BAP 2010) .................................... 2, 14, 15, 16

*In re Hassanally*, 208 B.R. 46 (9th Cir. BAP 1997)...............................................17

*In re Jensen,* 995 F.2d 925 (9th Cir. 1993)..................................................... 13, 17

*In re Matter of Bledsoe*, 596 F.3d 1106 (9th Cir 2009) ..............................................8

*In re Mattera*, 203 B.R. 565 (Bankr. D. N.J. 1997)...................................................15

*In re Miles*, 430 F.3d 1083 (9th Cir 2005).................................................................8

*In re Rosteck*, 899 F.2d 694 (7th Cir. 1990) .............................................. 15, 16, 19

*In re Schwartz*, 954 F.2d 569 (1992) .........................................................................9

*In re Tippett*, 542 F.3d 684 (9th Cir 2008) ................................................................8

*Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133 (1990) ...........................................6

*Johnson v. Home State Bank,* 501 U.S. 78 (1991)....................................................15

King Cnty. Sup. Ct. Case #09-2-36393-5 SEA ..........................................................3

*Local Loan Co. v. Hunt*, 292 U.S. 234 (1934)..........................................................11

*MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir. 1996)...........7, 8

*Ohio* v. *Kovacs,* 469 U.S. 274 (1985) .......................................................................14

*Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552 (1990) 9, 12, 14, 15

*Perez v. Campbell*, 402 US 637 (1971) ................................................... 5, 9, 10, 11

*Pratt v. General Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14 (1st Cir. 2006) .....................................................................................................................10

*Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2005)....................8

*Zilog, Inc. v. Corning*, 450 F.3d 996 (9th Cir. 2006)...............................................13

iv

**Statutes**

11 U.S.C. § 101(12) .......................................................................... 1, 14

11 U.S.C. § 101(5) .......................................................................... 12, 14

11 U.S.C. § 1328(a) ......................................................................... passim

11 U.S.C. § 507(a) ...............................................................................17

11 U.S.C. § 524(a)(2)............................................................................6

11 U.S.C. 1325(a)(5)...........................................................................10

Cal.Civ.Proc. Code § 1800 ..................................................................9

RCW 64.34.............................................................................. 7, 11, 16

RCW 64.38..........................................................................................2

**Other Authorities**

*8 Collier on Bankruptcy* (rev. 15th ed. 2008) ................................... 10, 19

H. Sommer, *National Consumer Law Center, Consumer Bankruptcy Law & Practice*,

    Vol. 1 (9th ed. 2009) ....................................................................19

H.R.Rep. No. 95-595 ........................................................................15

U.S. Const., Art. VI, cl. 2....................................................................5

# JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A) and (b)(2)(I), (K), and (L). This panel has jurisdiction under 28 U.S.C. § 158(a) and (b), which provide appellate jurisdiction over final orders. An order granting a motion for summary judgment is a final order. The order granting the motion of Sixty-01 Association of Apartment Owners on September 2, 2015, pursuant to 11 U.S.C. § 158(b) and Federal Rules of Bankruptcy Procedure 8001 and 8002.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Whether the bankruptcy court erred in granting summary judgment in finding that the Condo Association law, as a state regulation, is consistent with the structure, purpose, and operation of the Code as a whole.

2) Whether the bankruptcy court erred in granting summary judgment in that post petition homeowners' association dues and assessments arose out of a prepetition agreement and were dischargeable under 11 U.S.C. § 1328(a) as prepetition "debts" within the meaning of 11 U.S.C. § 101(12) and were not subject to the exceptions to discharge set forth in 11 U.S.C. § 523(a)(16).

## STATEMENT OF THE CASE

The Sixty-01 Association of Apartment Owners ("Sixty-01") sued Penny Goudelock ("Goudelock") to determine the dischargeability of post-petition homeowners' association ("Condo Association") dues, assessments, and other amounts under 11 U.S.C. § 1328(a). Invoking the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Foster*, 435 B.R. 650, 659 (9th Cir BAP 2010), the bankruptcy court affirmed the Condo Association's contention that the Condo Association debts are non-dischargeable because Condo Association dues are property rights that arise post-petition. This case concerns the interaction between the bankruptcy discharge and the state court's statute regarding Condo Association dues. The bankruptcy court erred in granting summary judgment in favor of the Association because any post-petition obligation to pay Association dues is a pre-petition debt that is dischargeable under 11 U.S.C. § 1328(a).

## FACTS

Goudelock purchased her condominium in February 2001 for $105,000 subject to a declaration of covenants and restrictions (the "Declaration") providing for the creation of Sixty-01, a Washington non-profit condominium association ("Condo Association") existing pursuant to RCW 64.38. ER 50-52. The Condo Association recorded its Declaration, Covenants, Conditions, Restrictions, and Reservations for Sixty-01 Condominiums in August 1978 against the property.

2

To fund the activities of the Sixty-01, the Declaration provided that the Condo Association could charge each lot owner monthly dues. ER 58-125. In addition, the Condo Association could make assessments upon the membership for the costs of maintenance, repair and replacement of common areas, and any capital improvements approved by the membership in the budget approval process. ER 58-125.

The Declaration expressly granted the Condo Association a lien on each member's lot for unpaid assessments. ER 58–125. The Condo Association could recover any costs and reasonable attorney's fees incurred in connection with the collection of delinquent assessments. ER 58-125. In addition, in any other proceeding arising out of an alleged default by an owner, Sixty-01 could recover costs and reasonable attorney's fees determined and awarded by a court if the Condo Association were the prevailing party. ER 58-125.

In 2009, the Sixty-01 Condominium Condo Association began foreclosure proceedings against Goudelock for delinquency of dues, including scheduling a sheriff's sale. King Cnty. Sup. Ct. Case #09-2-36393-5 SEA. Goudelock moved out of her condominium unit and, in March 2011, filed for relief under chapter 13 of the bankruptcy code. ER 46- 48; 144-149; 162- 163. Since she was no longer living in the property, Goudelock proposed an amended chapter 13 plan in June 2011 that surrendered the deeds of trust for Citifinancial and Litton Loan Servicing

on the condo, as well as the condominium lien for the Condo Association dues. ER 165 – 168. On April 19, 2011, Sixty-01 filed a proof of claim. ER 154. The proof of claim stated the claim was secured, the amount of the claim was $18,780.28, the accruing monthly assessments of $388.46. ER 154.The amounts set forth in the statement were for Condo Association dues, late charges and interest, and legal fees were listed as a secured claim. ER 154. In August 2011, the Condo Association obtained relief from stay, stating an intention to pursue its *in rem* foreclosure rights against the property alone. Even though the Condo Association filed a proof of claim regarding the obligations for post-petition assessments, the Condo Association did not object to the chapter 13 plan's failure to provide for them. The court confirmed the chapter 13 plan in October 2011. ER 155.

Although Goudelock did not object to Sixty-01's foreclosure on the property, the Condo Association canceled the sheriff's sale in December 2012 after the lender paid all of Goudelock's outstanding dues that were in arrears up to that point. ER 45-48. The unit subsequently sat empty until February 26, 2015 when the successor in interest to Litton Loan Servicing finally foreclosed on the property, extinguishing Sixty-01 Condominium's lien. ER 45-48; 54-56. On July 24, 2015 the Debtor completed her plan obligations and received a Chapter 13 discharge. 158-161.

4

# STANDARD OF REVIEW

A grant of a motion for summary judgment is reviewed de novo. *Danning v. Miller* (In re Bullion Reserve of N. Am.), 922 F.2d 544, 546 (9th Cir. 1991). Construing the evidence in the light most favorable to the nonmoving party, the district court must determine whether there are genuine issues of material fact and whether the lower court correctly applied the relevant law. *Id.* Interpretations of the Bankruptcy Code that present legal questions are reviewed *de novo. California Central Trust Bankcorp v. Been (In re Been)*, 153 F.3d 1034, 1036 (9th Cir. 1998).

# LAW AND ARGUMENT

## I.   State Condo Association Laws Cannot Peacefully Coexist With a Federal Bankruptcy Scheme Where Discharge Implies Preemption

The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, holds that state laws interfering with, or contrary to federal law are preempted. *Perez v. Campbell*, 402 US 637, 652 (1971). Under this doctrine, federal law preempts state laws that interfere with or are contrary to them. *Perez,* 402 U.S. at 652. In *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152-53 (1982), the Supreme Court explained that:

> Pre-emption may be either *express* or *implied*, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law

> altogether may be inferred if "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," if "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or if "the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose."

*See also Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 137-38 (1990); *FMC Corp. v. Holliday,* 498 U.S. 52, 58 (1990). That a particular area of the law may be a matter of special concern to the States, such as real property law, is not an impediment to preemption: "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Free v. Bland,* 369 U.S. 663, 666 (1962); *see also Ridgway v. Ridgway,* 454 U.S. 46, 54-55 (1981).

### A. State Laws That Impede a Debtor's Fresh Start Are Preempted

Congress' overarching purpose in enacting the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286, 287 (1991). In a Chapter 13, all debts incurred after the entry of the order for relief are dischargeable pursuant to 11 U.S.C. § 1328(a). Discharge also operates as an injunction to collect, recover or offset any such debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). However, in the absence of

bankruptcy, under Washington's Condominium Act, RCW 64.34, "the foreclosure of a mortgage does not relieve the prior owner of personal liability for assessments accruing against the [condominium] unit prior to the date of such sale." RCW 64.34.364(11). If state law prevails in this matter, post-petition Condo Association dues would be subject to collection on an unsecured deficiency after a foreclosure while a chapter 13 debtor is in bankruptcy, impeding the debtor's fresh start.

In *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir. 1996), the Ninth Circuit enumerated three reasons justifying preemption: the federal courts' exclusive jurisdiction over bankruptcy matters; the comprehensive nature of the bankruptcy code, demonstrating that Congress intended it to encompass all actions that adjust "rights and duties of creditors and embarrassed debtors alike"; and the Constitutional requirement that bankruptcy laws be uniform throughout the United States. *MSR Exploration*, 74 F.3d at 913-15. That the Code may not explicitly address a specific issue, such as the dischargeability of condominium association dues in ordinary Chapter 13 bankruptcies, does not necessarily mean state law is not preempted. *See Id at 913-15.*

Courts look to the goals and purposes of the Bankruptcy Code when determining whether it preempts a state law, and have favored an expansive interpretation of the Code's power to preempt on numerous occasions. For example, courts have found that the Code preempts state law when dealing with

7

misconduct that occurs during the proceeding of a bankruptcy case. [1] Other

instances involve issues that impede fundamental purposes of the bankruptcy code.

In those instances courts have tended to find that the state law is not preempted

when violations of a restriction in bankruptcy aimed to protect creditors is at issue.[2]

However, when it comes to the violation of a restriction protecting debtors and the

bankruptcy estate, the courts have generally ruled in favor of preemption. In

*Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2005), for example,

the Court found that the preference avoidance provision of Cal.Civ.Proc. Code

---

[1] See *In re Miles*, 430 F.3d 1083 (9th Cir 2005) (state law claims resulting from involuntary bankruptcy petitions are preempted); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996) (state law suits for malicious prosecution arising from disallowed proofs of claim in a bankruptcy case are preempted); *Bassett v. Am. Gen. Fin., Inc. (In re Bassett)*, 255 B.R. 747 (9th Cir. BAP 2000), *rev'd on other grounds*, 285 F.3d 882 (9th Cir.2002) (state law claims under the Consumer Protection Act for accepting payments from the debtor under an unenforceable reaffirmation are preempted).

2 See *In re Tippett*, 542 F.3d 684 (9th Cir 2008) (a debtor's voluntary transfer of a property to a bona fide purchaser before the closure of a bankruptcy case was valid where a trustee could have protected the estate and creditors for unforeseen conveyances by recording the debtor's chapter 7 bankruptcy petition or a notice of bankruptcy); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (the court refused to use the fraudulent transfer provision of the bankruptcy code to require a state foreclosure sale to yield a certain minimum price beyond what state foreclosure law required because states had a traditional state interest in regulating sales of real property and there was no need to inject uncertainty into the foreclosure process); *In re Matter of Bledsoe*, 596 F.3d 1106 (9th Cir 2009) (court held that avoiding transfers made pursuant to state court dissolution judgments would impinge on traditional state interest in the regulation of marriage and divorce and that there was no reason to add uncertainty into properly obtained dissolution judgments).

§ 1800, which involved assignments for the benefit of creditors in state court (similar to receivership), gave the state court assignee new avoidance powers that were in conflict with provisions of the bankruptcy code in chapter 7 regarding the goal of equal distribution of bankruptcy estate assets among competing creditors, and is therefore preempted by it. *Id.* at 1206. In *In re Schwartz*, 954 F.2d 569 (1992), the court held that transfers of property of the estate violate 11 U.S.C. 362(a) and that the purpose of the automatic stay to provide broad protection of debtors from creditors could only be vindicated if all violations were rendered void. In *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 563-564 (1990)*,* the Supreme Court found that restitution obligations imposed by state criminal courts are "debts" under the bankruptcy code and are therefore dischargeable in chapter 13 bankruptcies, finding that "the statutory language plainly reveals Congress' intent not to except restitution orders from discharge in certain Chapter 13 proceedings." *Davenport*, 495 U.S. at 563. Along the same lines, it is appropriate to look at the goals and purposes of bankruptcy within the context of chapter 13 of the Code, which governs reorganization for consumer debtors, when determining whether it preempts state laws that affect chapter 13 bankruptcies.

One case that is of particular interest here is *Perez v. Campbell*, 402 U.S. 637 (1971). In Chapter 13, there are two main goals: (1) giving the individual

9

debtor a fresh start by allowing her to discharge most of her debts, and (2) facilitating a plan of reorganization (as opposed to the Chapter 7 goal of liquidation), which allows a debtor to deal comprehensively with both unsecured and secured debts. *See In re Davis*, 716 F.3d 331, 332 (4th Cir 2013); *see also 8 Collier on Bankruptcy* ¶¶ 1300.01, 1300.02 (rev. 15th ed. 2008). *Perez* involved a debtor who had had a state tort judgment for an automobile accident discharged in bankruptcy; the state then denied the debtor a driver's license renewal because it still considered the tort judgment unpaid. *Perez*, 402 U.S. at 660.The Supreme Court found that the state law in question conflicted with the Code's goal of providing the debtor with a fresh start, and therefore was preempted by the Code. *Id.* at 660.

In a Chapter 13 case, the primary goal is to reorganize one's debts, both secured and unsecured. One option to address secured creditors includes a surrender of property to the secured creditor under 11 U.S.C. 1325(a)(5). Opting for "surrender" means that the debtor makes the collateral available to the secured creditor, who can, if it chooses to, exercise its state law rights in the collateral. *Pratt v. General Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 18-19 (1st Cir. 2006). By any reasonable standard, Goudelock certainly surrendered her property when she filed bankruptcy; she moved out of the unit, proposed to surrender the deeds of trust and liens to her creditors, and made no objection when

10

the Condo Association began foreclosure proceedings. Then, prior to her

bankruptcy discharge, her mortgage lender foreclosed on the property, taking title

out of her name. Like the hapless debtor in *Perez*, Goudelock complied with the

bankruptcy court's dictates in good faith every step of the way, only to be stymied

by a state statute that ignored the Bankruptcy Code's fundamental goal of

providing a fresh start to the debtor. The bankruptcy code's purpose of providing a

fresh start — namely, to give the debtor "a new opportunity in life and a clear field

for future effort, unhampered by the pressure and discouragement of preexisting

debt" (*Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934))—could be vindicated

only if all personal liability associated with property surrendered in a

reorganization is discharged. Preemption in such a fundamental area is clearly

what Congress intended.

### B. A Condominium Association's Right to Collect Post-Petition Assessments is a Pre-Petition Claim that is Governed by the Bankruptcy Code

Under the terms of the Washington Condominium Act (RCW 64.34), when

an association records its declaration, it establishes its lien priority to secure future

obligations to make payments of condo assessments even though payments are not

actually due at the time the declaration is recorded. *BAC Home Loans Servicing,

LP v. Fulbright*, 180 Wn.2d 754, 328 P.3d 895, 899 (2014). In addition to

constituting a lien against ac unit, each assessment is the joint and several

11

obligation of the owner or owners of the unit to which the same are assessed as of the time the assessment is due. RCW 64.34.364(12). "This is, in essence, a particular application of a lien for future advances, which secures obligations the obligor has not yet incurred. . . . [O]nce a lien for future advances is recorded, it takes priority over subsequently recorded liens, even where an obligation under the lien for future advances does not in fact arise until after the subsequent lien is recorded. Viewed in this light, a future lien for unpaid condo assessments is established at the time the condominium declaration is recorded, even though it may not be enforceable until the unit owner defaults on his or her assessments, if ever." *Fulbright*, 328 P.3d at 899.

Where a debtor's confirmed Chapter 13 Plan provides for the surrender of property and contains no provisions for payment of post-petition condo assessments dues, resolution of the dischargeability of the ongoing assessments issue rests upon whether the future lien for unpaid condo assessments is established at the time the condominium declaration is recorded, and thereby a debt owed to the Condo Association as contemplated by the discharge provisions under 11 U.S.C. § 1328(a). There is a presumption that post-petition condo assessments are governed by the Bankruptcy Code and they are affirmatively preempted if the statutory definition of "claim" under 11 U.S.C. § 101(5) is broad enough to define them as pre-petition enforceable obligations. *Davenport,* 495 U.S. at 558, 563-564.

While it is true that Congress generally does not disturb state law determinations of property rights in the assets of a bankrupt's estate, the existence of a property interest defined under state law is not conclusive. *Butner v. United States*, 440 U.S. 48, 54 (1979).

Although state law determines the existence of a claim, the question of when a claim arises under the bankruptcy code is determined by federal law. *Zilog, Inc. v. Corning*, 450 F.3d 996, 1000 (9th Cir. 2006). "A claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.),* 201 F.3d 999, 1007 (9th Cir. 2000). The Ninth Circuit has adopted the "fair contemplation" test for determining when a claim accrues for the purposes of 11 U.S.C. § 502(b). *Zilog,* 450 F.3d at 1000; *Cool Fuel,* 210 F.3d at 1007; *In re Jensen,* 995 F.2d 925, 930 (9th Cir. 1993). Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law. *Cool Fuel,* 210 F.3d at 1007.

By starting with state law rather than federal law, the bankruptcy court ignored the broad definition of "claim" in the Ninth Circuit and several steps of statutory analysis. To properly begin that analysis, courts look to the language contained in the discharge provision under 11 U.S.C. § 1328(a), which states "... the court shall grant the debtor a discharge of all *debts* ..." (emphasis added) with

13

certain exceptions inapplicable here. *In re Coonfield*, 517 B.R. 239, 242 (Bankr. E.D. Wash. 2014). Section 101(12) of the Bankruptcy Code defines "debt" as a "liability on a claim." *Coonfield*, 517 B.R. at 242. In turn, § 101(5) (A) defines "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id*. A "right to payment" is nothing more than an enforceable obligation without regard to the purposes or enforcement method created under state law. *Davenport*, 495 U.S. at 559. In short, the Code "contemplates that all legal obligations of the debtor . . . will be able to be dealt with in the bankruptcy case." *Davenport,* 495 U.S. at 558; *see also Ohio v. Kovacs,* 469 U.S. 274, 279 (1985). Generally in bankruptcy, all obligations that meet the definition of a "claim" are discharged unless there is an *express* exception under 11 U.S.C. § 523(a).

Following the Ninth Circuit BAP in *In re Foster*, 435 B.R. 650, 659 (9th Cir BAP 2010), the bankruptcy court found that the debtor's obligation to pay on post-petition assessments arises from the debtor's property interest rather than from any contractual or equitable remedy and is thus not a claim subject to discharge in bankruptcy. In *Foster*, the Court interpreted § 101(5) of the Code to limit claims to pre-petition contracts or equitable remedies. 435 B.R. at 661. The Court also found that because it does not include an *express* treatment for post-petition condo

14

assessments in a chapter 13, the Code does not preempt state law governing the condominium association's property interest. *Foster,* 435 B.R. at 661. But *Foster* is distinguishable here because the debtor in *Foster* wanted to keep the condominium but not pay the homeowner's dues and assessments. *Foster,* 435 B.R. at 661. In this case, Goudelock vacated the property prepetition, and her confirmed Chapter 13 plan provided for the surrender of all rights in the property to the homeowner's association and the mortgage lender. Since confirmation, the mortgage lender foreclosed on the property and the debtor fulfilled her plan obligations, receiving a Chapter 13 discharge.

Moreover, a plain reading of the statutory definition of a "claim" naturally lends itself to the interpretation that post-petition assessments are dischargeable under the Seventh Circuit opinion in *In re Rosteck*, 899 F.2d 694, 696 (7th Cir. 1990); *see also In re Mattera*, 203 B.R. 565, 571 (Bankr. D. N.J. 1997). The Supreme Court has noted that Congress intended to adopt the "broadest possible" definition of a "claim," and that the Code "contemplates that all legal obligations of the debtor, [no matter how remote or contingent,] will be able to be dealt with in the bankruptcy case." *Davenport,* 495 U.S. at 558 (quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 309 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787). *See also Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991). Under this reading, the Court's reasoning in *Foster* is faulty.

15

Congress intended the definition of "claim" to be broad, and the Ninth Circuit adopted a test to find that a claim *arises* when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet *accrued* under nonbankruptcy law. *Cool Fuel*, 210 F.3d at 1007. Bankruptcy courts have found it important that the assessments arise and are due every month and that the obligations do not arise until they are due under RCW 64.34.364(12). However, this interpretation misreads the statutory operation because, an association establishes its right to [payment] for future assessments under its declaration and the statute, when no assessments are yet due. *See Fulbright*, 328 P.3d at 899. Yet, rather than analyzing whether the existence of a cause of action is similar to the existence of a post-petition condominium assessment, the *Foster* court mistakenly limited the definition of a "claim" to a contract or equitable remedy.

At the time of the filing of Goudelock's Chapter 13 petition, the obligation of the debtor to Sixty-01 Condominiums for post-petition assessments was a contingent, unfixed, unmatured right to payment which constituted a "claim" and a "debt" for § 1328(a) discharge purposes, following *Rosteck,* 899 F.2d at 696. The claim was *contingent* upon the retention of ownership by the debtor, and the regular assessment of fees by the association. The claim was *not fixed* in terms of a certain and definite amount due at the time of the filing of the petition. The debt

16

was *unmatured*: it would mature each month as assessments were made by the association.

To reject the obligation by the debtor to Sixty-01 Condominiums as of the date of the filing of the petition because it is not based in contract is to render meaningless and irrelevant the terms "contingent," "unliquidated", and "unmatured" in the statutory definition of the term "claim". Where the Ninth Circuit has found future claimants in the context of tort liability, environmental cleanup, taxes, and contingent insurance guarantees, to name just a few, it is an odd interpretation of statutory construction to find that homeowner's assessments are too remote. *See e.g. Cool Fuel*, 210 F.3d 999; *In re Hassanally*, 208 B.R. 46, 53 (9th Cir. BAP 1997); *Jensen*, 995 F.2d 925; *see also Grady v. AH Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988)(the court found a contingent claim where the manifestation of injury from use of the Dalkon Shield was in the future even though a right to the immediate payment of money in the case arises when the acts constituting the tort have occurred prior to the filing of the petition).

### C. The Condo Assessment Exception In 11 U.S.C. § 523(a)(16) Does Not Apply

Section 1328(a) excepts from discharge any debt provided for under § 507(a)(8)(C) or 523(a) (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of Title 11. Missing from this list is 11 U.S.C. § 523(a)(16), which provides as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

The Bankruptcy Reform Act of 1994 enacted § 523(a)(16), which was amended by BAPCPA in 2005 to add fees and assessments for a lot in a homeowners' association and to change when fees are nondischargeable. This exception to discharge does not apply in Chapter 13 cases because this section was not added to section 1328(a). As one commentator has observed,

The amendment resolves the disputes about whether other condominium or cooperative fees are claims that can be discharged. By specifying that some postpetition fees are claims that cannot be discharged, the new section implicitly undermines decisions holding that such fees were not prepetition claims. In addition, the legislative history states that, except to the extent made nondischargeable by this

18

section, obligations to pay postpetition fees are dischargeable, and
expressly adopts the holding of *In re Rosteck*, [899 F.2d 649 (7th Cir.
1994)], which held that because they arose from a prepetition contract
they were prepetition claims.

H. Sommer, *National Consumer Law Center, Consumer Bankruptcy Law & Practice*,

Vol. 1, § 15.4.3.15, at p. 512 (9th ed. 2009) (footnotes omitted).

Additionally, for all chapters of the code*, Collier* argues that the "legal,

equitable, or possessory ownership interest in the property" language in the statute

should be interpreted as saying that the fees and assessments falling due after the

order for relief are "initially nondischargeable while the debtor retains ownership of

the condominium unit or share of the cooperative, but becomes dischargeable upon

termination of the debtor's interest." 8 *Collier on Bankruptcy* ¶ 523.24 (Alan N.

Resnick & Henry J. Sommer eds., 15th ed. 2005). If this interpretation of 11 U.S.C.

§ 523(a)(16) is correct, Congress' failure to incorporate any *express* treatment for

post-petition condo assessments or homeowner's dues into the discharge or plan

provisions in Chapter 13 makes sense. Congress assumes that a Chapter 13 Plan will

encompass either their continued ownership or surrender within the plan and the

disposition of property itself will determine the discharge of the post-petition liability.

8 *Collier on Bankruptcy* ¶ 523.24.

Even if § 523(a)(16) were to apply to chapter 13 bankruptcies, the clause

would nonetheless have no bearing on this case. Under 11 U.S.C. § 523(a)(16), the

debtor is liable only for post-petition dues that arise after the bankruptcy filing "for

so long as the debtor… has a legal, equitable, or possessory ownership interest in such unit." A foreclosure on the property effectuates that release of legal, equitable or possessory interest in the property, leaving any remaining amounts a personal liability that were foreclosed in the bankruptcy. In situations where a debtor has surrendered the property, either in a chapter 7 case or in a chapter 13 plan, the debtor has agreed to make the collateral available to the secured creditor, i.e. to cede her possessory rights in the collateral upon plan confirmation in a chapter 13 and upon discharge in a chapter 7. A secured creditor is not *required* to accept possession of the property upon plan confirmation or discharge, since a creditor's decision whether to foreclose on real property is purely voluntary and discretionary. A secured creditor would not be in violation of the discharge injunction were it to insist upon its *in rem* rights under state law. However, once the property is gone, so are the *in rem* rights.

## <u>CONCLUSION</u>

Appellant Penny Goudelock requests that the district court reverse the bankruptcy court's order granting summary judgment in favor of Sixty-01 Association of Apartment Owners and hold that Appellant is entitled to judgment as a matter of law in that the claim for post-petition homeowners' association fees and assessments is dischargeable under 11 U.S.C. §1328(a).

Dated: November 16, 2015

Respectfully submitted,

*/s/ Christina L Henry*

20

Christina L Henry, WSBA #31237
Attorney for Appellant Penny Goudelock
Henry, DeGraaff & McCormick, PS
1833 N 105th St, Ste 203.
Seattle, WA 98133